## No. 8211.

SUCCESSION OF WALTER O. WINN.    OPPOSITIONS TO ACCOUNT OF EXECUTOR.

An executrix who has, by error, acknowledged in writing on the back of a note that the same was still due, may be heard as a witness to prove that the written date of such acknowledgment is false and that, in fact, she signed the acknowledgment at a time when the note was already prescribed.

Under the principle of *stare decisis*, this Court will not disturb the rule established by numerous Decisions, that prescription was not suspended during the late civil war in this country.

This Court does not consider the rule of suspension of prescription established in section 1048 of the United States Revised Statutes, as intended by Congress to be acknowledged and enforced by State Courts. The isolated case of Stewart vs. Cohn, 11 Wall. 493, is not acknowledged as authority, and that of Aby & Catchings vs. Brigham, curator, is overruled.

APPEAL from the Twelfth Judicial District Court, parish of Rapides. *Barbin*, J.

---

*Merrick, Race & Foster* and *R. A. & Rob't P. Hunter* for Opponent Mayfield, Appellant:

First—Prescription did not run against a resident within the Federal lines holding a claim against a resident within the Confederate lines, from April 19th, 1861, to April 2d, 1866. U. S. Revised Statutes, section 1048; 12th Wallace, 700; 6th Wallace, 532; 11th Wallace, 244, 493, 508; 15th Wallace, 177; 18th Wallace, 155; 22d Wallace, 576; 28th Louisana Annual Reports, 840, case of Aby & Catchings vs. J. Harvey Brigham.

Second—Rotchford Brown & Co. being residents of the City of New Orleans, and Mrs. Mary E. Winn, testamentary executrix and universal legatee of W. O. Winn, being in the State of Texas, prescription did not run against the notes now owned by Mayfield until April 2d, 1866.

Third—*Contra non valentem agere præscriptio non currit.*

Fourth—A claim against a succession being once acknowledged by the representative of a succession, prescription is suspended as long as the succession remains open and in the process of administration. Succession of Romero, 29th Annual, page 493; Henry Renshaw vs. Geo. W. Stafford, Executor, 30 Annual, 853.

Fifth—An executrix cannot be heard to deny, fifteen years after it was made, her own official endorsement on the notes. Her oral testimony in the record should be excluded. Nor could any one else attack it except upon the allegations of error or fraud, which are not pleaded here.

Sixth—Witness contradicting his own act not credited; Puckett vs. Law, 25 An. 597; Elbert vs. Wallace & Co., 26 An. 706; Howell vs. Sheriff, 27 An. 701; Reynes vs. Zacharie's Succession, 10 L. 129; Mathews vs. Boland, 5 R. 200; McMasters vs. Stewart, 11 An. 547.

*R. J. Bowman* for the Executor, Appellee.

*Jas. Andrews, Jr.*, for Opponent DuBois, Appellant.

*W. T. Blackman* and *Breaux & Hall* for the universal legatee, Appellant:

First—The right of the several claimants to the succession of Winn, including Mayfield, to assert their claims according to law, if any such they have, and of the succession, and all parties in interest to contest the same, and each of them be reserved for future adjudication. Succession of Winn, 20 An. 794.

Second—Placing Mayfield's claim on the tableau was therefore an error and a violation of this decision, and cannot, therefore, avail him.

Third—The notes of Mayfield and all notes of that series, were prescribed in December, 1865. The recognition of a debt of the succession, as of November 1st, 1865, is nevertheless proven not to have been made until after January 1st, 1866, when prescription had accrued; and when sued on, as in the Gasquet claim, prescription should have been pleaded.

Fourth—No executor or administrator has the right to renounce an acquired prescription, even by the most solemn written acts. 21 An. 373; 22 An. 465; 23 An. 194; 24 An. 83; 24 An, 380. Prescription was not suspended or interrupted by the war. Jacquet vs. Webb, Levert & Co. 22 An. 111; Mearson vs. Robertson, 19 An. 170.

Fifth—The plea of prescription, which should have been interposed in bar of a judgment in the Gasquet suit, may now be interposed by any party having an interest. Succession Winn, 30 An. 702.

Besides, the law will not permit the rights of heirs, legatees and third persons to be prejudiced by the inaction or improper conduct of executors.

Sixth—Prescription is not interrupted by filing an account, without authorization of the representative of the succession. Succession Piper, 26 An. 206.

Seventh—Acts of Congress, like acts of other States, are not binding upon the courts of this State in the administrtion of local laws; only when such laws are made in pursuance of the Constitution have they any binding force. Story on the Cons. § 1830; Miltenberger vs. Witherow, 24 An. 184.

Eighth—An inspection of the authorities will show that the act of Congress referring to prescription has been enforced by the U. S. Supreme Court, only in cases tried in the Federal courts, without pretense that it would govern State tribunals where State statutes of limitation exist.

Ninth—Prescription of a judgment can only be interrupted by suit to revive. Smith vs. Palfrey, 28 An. 615; Samory vs. Montgomery, 27 An. 51.

---

The opinion of the Court was delivered by

TODD, J. On the 5th of July, 1880, J. M. Wells, Jr., executor of the succession of Walter O. Winn, filed in the District Court of the parish of Rapides a provisional account of his administration of said succession.

This account was opposed by J. D. Dubose, John S. Turner and Widow Gasquet, claiming to be judgment creditors of the succession, and by Mary E. Richards, wife of A. Keene Richards, formerly Mary E. Winn, surviving widow and universal legatee of the deceased.

The alleged judgment creditors opposed the account; first, because their judgments had not been recognized by the executor and placed on the account as first claims against the succession. In common with Mrs. Richards they opposed certain claims allowed in the account, the principal one of which was the claim in favor of John S. Mayfield, based on nine promissory notes, amounting, exclusive of interest, to $45,000, and against which the prescription of five years was pleaded.

Mrs. Richards and Mayfield also pleaded the prescriprion of ten years against the judgments mentioned.

The District Judge amended the account by recognizing the judg-

88

ments in favor of Dubose, Turner and Gasquet, and ordering them to be paid, and dismissed the opposition to Mayfield's claim, and homologated the account as amended.

From this judgment Mrs. Richards, Dubose and Mayfield are appellants.

I. The judgment in favor of Turner was signed on the 12th of March, 1866, and that in favor of Gasquet on the 7th of March, 1868, and neither was ever revived, and both were, therefore, clearly prescribed; and in allowing and recognizing them as subsisting claims against the successions the judgment was manifestly erroneous. C. C. 3521.

II. In relation to the claim of John S. Mayfield, the facts pertinent to the plea of prescription urged against it, which is the sole issue respecting it to be tried, are as follows:

On the 30th of March, 1860, Walter O. Winn executed, in favor of Ratchford, Brown & Co., ten promissory notes, secured by mortgage on a plantation in Carroll parish for $5,000 each, one-half of said notes payable on the 10th of November, and the other half payable on the 10th of December of the same year, nine of which notes were transferred to Mayfield in the year 1866.

Winn died in 1862, leaving the notes unpaid, and by last will constituted his surviving widow, Mary E. Winn, (now Mrs. Richards), his universal legatee, and appointed her executrix of his estate.

On each of the nine notes held by Mayfield appears the following acknowledgment indorsed thereon, to wit:

"I hereby acknowledge this note to be a debt due by the succession of Walter O. Winn, deceased, secured by mortgage upon the property named in the act of mortgage, in Carroll parish, and I promise to pay the same in due course of administration.

"Alexandria, La., Nov. 1st, 1865.

(signed)                                        MARY E. WINN."

The opposition of Mrs. Richards (Winn) to these notes is couched in the following language:

"She opposes the ordinary claim of nine notes for $5,000 each, amounting to $45,000, which is allowed by the public administrator, (executor), and which he proposes to pay.

"Opponent says that the notes are prescribed, and were prescribed at the date they were accepted by the executrix, the date of the acceptance being written on the back of the notes long before they were accepted by the executrix, and accepted in error; the prescription of five years she specially pleads as a bar to said claim."

Mrs. Richards, who was sworn as a witness on the trial, fully sustains by her testimony the allegations of her opposition as to the time of

the acknowledgment of the notes, and her error or ignorance with respect to the date expressed in the writing signed by her,—showing that the actual date of the signing was in 'January, 1866, instead of 1st November, 1865. And she is fully corroborated with respect to the real date of the signing by the testimony of Judge Ryan, also in the record.

The testimony of Mrs. Richards was, however, objected to by the counsel for Mayfield, and a bill of exceptions taken to its admission. The first objection is " that Mrs. Richards was estopped from denying her written acknowledgment or contradicting any part of the same." We have carefully examined the authorities cited by counsel to sustain their objection, but do not think them applicable.

The executrix of Winn's succession was wholly without authority to acknowledge a claim against the succession which was barred by prescription. If she did so, and the written acceptance showed that it was allowed after prescription had run, it would palpably be without effect as to the rights of other creditors, heirs or legatees of the succession. If, however, though the acknowledgment was made after prescription, yet the writing showed a date of acceptance before prescription had accrued, and was, therefore, false and the signature of the executrix to such false writing had been induced by error, and such error expressly alleged, it would certainly be competent for the executrix to expose the falsity of the writing and correct the error, and it would be her duty to do so ; and the right of any other party interested to do the same and, by such exposure, protect themselves from loss, would seem plainer still.

In this case, the proof is offered by Mrs. Richards as universal legatee, in which capacity alone, her opposition is made. The preparation of a written acknowledgment of the notes in question, and the insertion therein of a false date, and the presentation of the same to the executrix with this false date, without calling her attention to it, was a fraud upon the succession and its representative and subject to be exposed by any one interested.

The next objection urged to the testimony, was that the claim of Mayfield had been twice contested on the ground of prescription, and it had been decided that it was not prescribed and, therefore, the matter was *res adjudicata* and closed to further inquiry. This question is not free from difficulty ; but from a careful study of the cases in which it is contended the decisions were made, we have reached the conclusion that they do not sustain the plea.

The first case cited in support of the plea, is that 'of the succession of W. O. Winn : On petition of J. S. Mayfield to destitute Mary E. Richards, executrix; reported in 27 An. 687. In this proceeding, Mayfield charged that Mrs. Richards had forfeited the executorship of the succession by quitting the State, becoming a non-resident of the same,

and leaving no agent to represent her under a power of attorney duly recorded. Mrs. Richards denied the right of Mayfield to institute such proceeding, on the ground that he was not a creditor of the succession, and averred that, if his claim ever existed, it was prescribed. There was judgment rendered destituting her of the executorship.

The object of that suit was solely the destitution of the executrix. There was no judgment sought or asked for on the notes ; but the question whether Mayfield was a creditor or not was a mere incident of the proceeding, raised with reference to the right of the plaintiff therein, as an interested party, to demand the removal of the executrix or rather to have declared her forfeiture of the executorship by reason of removal from the State. So far as related to the existence of the claim in question or its extinguishment by prescription or otherwise, neither the succession nor its creditors were properly represented, and any ruling on the point could in no manner affect them.

This is the view taken of this identical question by our immediate predecessors in the other case cited and relied on by the counsel for Mayfield. We refer to the case entitled Succession of Walter O. Winn, reported in 30 An. 702.

In that case, a rule had been taken by persons claiming to be creditors of the succession to cause the property thereof to be sold to pay their debts. This was opposed by Mayfield. These creditors then denied his right to oppose them and pleaded prescription against his claim. Mayfield resisted the plea on the ground that the question was *res adjudicata*, and cited in support of it the decision in 27 An., to which we have referred.

The Court in ruling on the question said :

" It is also denied that Mayfield is a creditor, and averred, if he ever was, his debt is prescribed. He claims that the question of prescription was judicially determined in his favor in a suit brought by him to remove Mrs. Winn from the administration of the estate; and that his debt which is evidenced by several promissory notes, has been legally acknowledged both by the former and the present executor. The evidence supports the latter allegation ; but we do not consider the adjudication in the amotion suit as determining finally, for other purposes and against other creditors or parties interested, the matter of prescription." The Court dismissed the entire proceedings, and in their decree used this language : " That the right of the several claimants, including Mayfield, to assert their claims according to law, if any such they have, and of the succession and all parties interested to contest the same, be reserved for a future adjudication."

This disposes of the plea of *res adjudicata*, and with it of the objections to the admission of Mrs. Richards' testimony. This testimony,

supported as it is by Judge Ryan, as before stated, leaves no doubt that
the acknowledgment of the claim by the executrix was made after the
expiration of five years, the prescriptive term, from the maturity of the
notes.

We would remark, also, that the plea of prescription was urged in
these opposition proceedings against the claim of Mayfield, not only by
Mrs. Richards, but by those claiming to be judgment creditors of the
succession.

III. The counsel for Mayfield and the executor, however, urge,
with great earnestness that, even admitting that the acknowledgment of
the notes was not made within the five years, prescription on the notes
was suspended by and during the war, and also by the effect and under
the operation of the Act of Congress embraced in section 1048, United
States Revised Statutes.

Upon the first ground of suspension urged, whatever opinion we
might entertain respecting it were the question a new one, we must con-
sider it put at rest by repeated and uniform decisions of this Court
running through many years. These decisions declare, in unmistakable
terms, that the war between the States did not operate a suspension of
prescription. Upon the principle of *stare decisis* we do not feel autho-
rized to disturb them. 19 An. 187; 20 An. 280, 363, 413, 427 ; 21 An. 76,
106, 126; 22 An. 111; 23 An. 553, 748.

The Act of Congress, relied on as operating a suspension of pre-
scription in this case, reads as follows :

"In all cases where, during the late rebellion, any person could not,
by reason of resistance to the execution of the laws of the United States,
*or of the interruption of the ordinary course of judicial proceedings*, be
served with process for the commencement of any action, civil or crimi-
nal, which had accrued against him, the time during which such person
was beyond the reach of legal process shall not be taken as any part of
the time limited by law for the commencement of such action."

The most natural inference to be drawn from the reading of this
statute is, that it is applicable alone to actions and proceedings in the
Federal courts and intended to establish a rule of practice therein on
the subject mentioned. We cannot readily conceive that it was designed
as a law to govern the States and State courts, and that, in fact, it
was virtually to constitute an amendment to our Code, making an addi-
tion to the causes of the suspension of prescription therein enumerated.
We supposed, if there was any one subject exclusively within the con-
trol of the State governments, it was that which related to the organiza-
tion of State courts, defining the different kinds of actions, prescribing
the time within which they must be instituted, and, in fine, establishing
a system of practice for the regulation and government of such courts.

This was a power inherent in all sovereignties and which the States had exercised to the fullest extent before they became members of the Federal Union, and which it was not supposed they had parted with or impaired by any delegation of the power, express or implied, to the Federal government. Indeed, it would be difficult to the mind, uninformed on this point, to imagine under what particular clause of the Federal Constitution the Congress of the United States could claim the right to regulate the prescription of actions in the States; that is, to determine within what time actions were to be brought and to declare that any particular cause, condition or circumstance could modify such rule of practice or suspend its operation. The statute in question, if applicable to State courts, is just one of this kind, and necessarily involves such an assumption of power. Opposed to such authority, in our opinion, are the plain terms of the Constitution itself, and the as plain teachings of the framers of that instrument, and of the writers on the subject of its construction and the relative powers of the States and the Federal government under it. And equally opposed to it we believe to be the jurisprudence—Federal and State—established by an unbroken series of decisions on subjects strictly analogous to the one involved.

State courts, acting on matters within their jurisdiction, under State laws regulating their practice in them and the right and form of actions to be prosecuted before them, and in no manner impinging on the inhibitions of the Federal Constitution, are just as independent and free from Federal control and interference as the courts of a distinct sovereignty or of another country. And, notwithstanding our profound respect for that august tribunal, we cannot yield our firm and conscientious convictions on this subject to an isolated decision of the Supreme Court of the United States, (Stewart vs. Kohn, 11 Wall. 493), which held that this Federal statute was applicable to proceedings in State courts; nor are our convictions changed by the legal subtlety displayed in that decision, which locates the constitutional authority of Congress thus to legislate for the government of the State courts, and to fix the prescription of actions therein in or under the war making power. We say isolated decision, for the reason that it is the only one we find in which the decision was rendered on appeal from a State court, and where it is distinctly announced that the statute in question applied to and controlled proceedings in State courts—every other case in which the effect of that statute was at issue having been instituted in the Federal courts, and such effect not having been expressly extended to the State courts.

Nor are we any more impressed with the authority of a decision of the Supreme Court of this State, 28 An. 840, Aby vs. Brigham, curator, invoked, which contains a mere dictum on the point without comment or

reason, and shows nothing on the face of it but an acquiescence in an authority which, if universally conceded and exercised in *pari materia*, can successfully invade every subject heretofore acknowledged to pertain to the domestic affairs and institutions of a State, and supplant the rights of action, the mode of procedure or practice in the State courts, by other systems, modes and methods, framed and supplied by Congressional legislation. The case last referred to, to the extent of the authority of this Court, may be considered overruled. ·

Under this view of the subject, we conclude that the claim of Mayfield was prescribed when acknowledged by the executrix, and that the acknowledgment made after prescription had run, was without legal effect against the succession or any person interested therein.

This disposes also of the questions raised by the opposition of Mayfield, who, being without interest, has no right to oppose the claims of others, or raise issues touching any of the proceedings.

IV. The claims of Mayfield, as also of Turner and Gasquet, being disposed of, the only parties left before the court are the executor and the opponents, Mrs. Richards and Dubose.

We do not understand that the judgment of Dubose is opposed by Mrs. Richards, inasmuch as no objection thereto is urged by her counsel in their brief. But, however, even if we consider her opposition as extended to this claim, it is without effect, since it is limited to the plea of prescription against the judgment; and we find that ten years have not yet elapsed since its rendition.

V. The only other items of the account opposed are four, consisting of the charges for attorney's fee of R. J. Bowman (item 30), $919; taxes, $266 62; (item 4), and costs of certain suits.

The evidence sustains the charge for attorney's fees, and the ground of opposition to the costs is not on account of their incorrectness but of their not enuring to the benefit of the estate, which allegation is unsustained by proof and is, therefore, overruled. The item for taxes is supported neither by a voucher nor by proof, and must be rejected.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be amended by rejecting the claims of Jno. S. Mayfield, John S. Turner, Widow Gasquet, and the item of $266 66 for taxes, as proper charges against the succession of W. O. Winn, deceased, and sustaining the oppositions of Mrs. Mary E. Richards and J. D. Dubose thereto, and, as thus amended, it be affirmed the costs of the oppositions of Mayfield, Turner and Gasquet in both courts, to be paid by these opponents respectively, and the balance of the costs · by the succession of W. O. Winn.

LEVY, J.   In our original judgment we rejected the claim for $266 26 (item 4) for taxes, on the ground that it was "neither supported by a voucher nor by proof."   On his motion and brief for a rehearing, the executor urges that the vouchers, as to this item, were filed in the lower court and that evidence was taken in reference thereto—not this evidence but the voucher itself, is contained in the record; that the plea of prescription was made against the item, which is a virtual admission that the debt once existed.

Counsel for the opponent, Dubose, in an addendum to the brief in behalf of executor, admits that item 4 for said taxes "was supported on the trial in the District Court by the receipt of the tax collector of Caddo for that amount of taxes paid by the executor on the land in that parish, sold in 1878."   There was no contest in the lower court as to the verity of the payment, but simply upon the question whether the taxes were prescribed when paid by the executor.

An examination of the record on this point satisfies us that prescription had not accrued at the date of said payment.   Our original decree must, therefore, in respect to that item, be amended.

We find no reasons advanced to justify any change in our opinion and decree on the other points and matters decided by us.

It is, therefore, ordered that our original decree herein be amended so far as it rejects the item of $266 62 for taxes paid by the executor, which item is now recognized as a just claim against the succession, and in all other respects our former opinion and decree are to remain undisturbed.